UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jose Bisono, Joaquin Vicente, and Edgar Mendez<br><br>Plaintiffs,<br><br>v.<br><br>TDL Restoration Inc.,<br>Driton Quni and Gjon Quni,<br><br>Defendants. | Case No. 7:17-cv-09431-JCM |

**AFFIDAVIT OF ROBERT MCCREANOR, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

Robert McCreanor, Esq., being duly sworn, deposes and says:

1.  I serve as the legal director of Worker Justice Center of New York (WJCNY), Plaintiffs' counsel herein. WJCNY, a statewide non-profit legal assistance organization represents low-wage and immigrant workers throughout New York State in labor, employment and other related litigation matters.

2.  Along with my colleagues Maureen Hussain and John Marsella, I have been co-counsel for Plaintiffs in this case and responsible for the prosecution of their claims against Defendants.

3.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**I.      History of the Litigation**

4.     This is an action under the FLSA and NYLL to recover unpaid wages owed by Defendants to Plaintiffs who performed long hours of physical labor in Defendants' construction business but were never paid a premium rate for overtime hours, were paid nothing whatsoever for many hours of "off the clock" work and were repeatedly given pay checks that bounced. Defendants never maintained time and pay records in compliance with the FLSA and NYLL and failed to give Plaintiffs the required hiring and wage notices under NYLL. *See* Complaint, ECF Docket 1.

5.     Prior to the commencement of this action, Defendants sought to evade responsibility for Plaintiffs' owed wages, failing to even reimburse Plaintiffs for their bounced paychecks. ECF Dkt. 115.

6.     Defendants' recordkeeping and litigation decisions required Plaintiffs' counsel to perform substantial work in this case.

7.     In their Answer, Defendants interposed numerous affirmative defenses which are inapplicable to Plaintiffs' FLSA and NYLL claims. Defendants' original "Sixth Affirmative Defense" alleged, *inter alia*, that "Plaintiff Bisono was having sex in a car with a nurse, notwithstanding the fact he is married to another woman" and "Plaintiff has fathered other children with other women outside his marriage." *Id.*  In the interest of judicial economy, Plaintiffs did not move to strike these defenses, but were compelled to spend time researching the law and convincing Defendants to withdraw their Sixth Affirmative Defense.

8.     Throughout discovery, Defendants persisted in seeking to question Plaintiffs about this and other similarly irrelevant topics including their country of birth, citizenship and immigration status, employment authorization and corresponding taxpayer status (Dkt. 57, pp. 7-9; Dkt. 60-1, pp. 10-11, 20-21); Plaintiff Joaquin Vicente's family composition, the maternity of

his children, and plans for guardianship of his children in the event of an emergency (Dkt. 60-1, pp. 8-10; Dkt. 61-1, pp. 5-8, 19-22); and the name and location of Plaintiff Joaquin Vicente's children's health care providers (Dkt. 61-2, pp. 18-21).  Defendants' insistence on pushing these irrelevant issues, none of which constitute or support an actual legal defense to the Plaintiffs' wage and hour claims, caused Plaintiffs' counsel to devote additional time to deposition preparation, counseling of their clients in relation to Defendants' inquiries and, ultimately, filing motions *in limine* to exclude reference to any such claims at trial. (Dkts. 82, 83)

9.      Defendants' arguments shifted through the course of this litigation but were consistently contrary to well established law.  They initially claimed that their payment of Plaintiffs' meal breaks entitled them to an *ex post facto* credit against Plaintiffs' owed wages and that, on balance, Plaintiffs' actually *owed* money to Defendants.  After more than a year of litigation, and only after Plaintiffs' filing of another motion *in limine*, Defendants flatly conceded that "the law seems fairly established as to payment for mealtime breaks." (Dkt. 97) Defendants then claimed, incredibly, that they did *not* have a policy of paying for meal breaks, despite their previously stated position in this litigation and their own written policy.  *Id*.  Defendants subsequently sought to claim "offset credit" for purported loans or tax related payments which they did not plead in their Answer, on which they had conducted no discovery and which under no circumstances would be legally permissible defenses to FLSA and NYLL wage claims. Plaintiffs moved for exclusion of any information relation to Plaintiffs' taxpayer status at trial. (Dkt. 82)

10.     Because Defendants maintained time and pay records in an incomplete and disorganized manner, Plaintiffs' counsel were required to undertake a time-consuming review of years' worth of handwritten call-in sheets and cross-check them against a variety of other

documents, including weekly pay worksheets, ADP records, pay stubs, check memos, and emails in order to substantiate Plaintiffs' claims and calculate damages.

11. Defendants did not respond to discovery within the time allotted by the rules. When they finally responded, they produced ten "boxes" including thousands of pages of documents without Bates stamps or any form of pagination whatsoever, that Plaintiffs had to sort through, and with no indication of what material was supposedly responsive to which request. This necessitated hours of work by Plaintiffs' counsel to review, catalogue and analyze Defendants' production. This cumbersome work continued through final pre-trial preparation as Plaintiffs' counsel was required to painstakingly identify and pull from the jumbled production documents to be used as exhibits in opposition to Defendants' summary judgment motion and at trial and information to be input into Plaintiffs' summary exhibit.

12. Throughout this litigation, Plaintiffs have sought to avoid unnecessary expenditure of time and money and to resolve the matter through negotiated settlement. Plaintiffs participated in multiple mediation sessions at the outset of the case. (Dkts. entry dated 3/16/2018, 28, 33, 41) Plaintiffs affirmatively requested that Defendants agree to participate in a settlement conference with a Magistrate Judge prior to trial. Plaintiffs themselves lost wages in attending these sessions and earnestly sought to resolve the case on reasonable terms so as to avoid missing additional days of work. Indeed, Plaintiffs' counsel, a non-profit public interest law firm, also sought to achieve a reasonable settlement so as to avoid the substantial cost and resource allocation necessitated by protracted litigation and trial.

13. Plaintiffs took seriously the Court's directive that the parties should attempt to stipulate to any amount of damages possible prior to trial. (Dkt. enty dated 4/30/2019) After an in-person meeting with opposing counsel, Plaintiffs' counsel prepared a detailed proposed

stipulation as to hours worked, regular rates of pay and gross pay. Defendants refused to stipulate to any of these facts for any pay period for any Plaintiff or to any amount of owed wages.  Only after the Defendants filed their proposed trial exhibits and Plaintiffs pointed out that much of the data points regarding hours and wages were overlapping with Plaintiffs' prior proposed stipulation did Defendants agree to any stipulation at all. Defendants' inexcusable delay in reviewing their own records and Plaintiffs' proposed stipulation caused Plaintiffs to undertake significant additional work in preparing for trial, principally in the development of a comprehensive summary exhibit much of which could have been obviated by stipulations.

14.     Investigation of the facts underlying the claims and development of evidence to support them took multiple meetings with the Plaintiffs, both individually and in groups. Preparation of damages calculations for mediation and settlement conferences, execution of the declarations in support of opposition to defendants' summary judgment motion, preparation for depositions and trial required additional individual and group meetings.  As all of the Plaintiffs speak Spanish as a first language, interviews and fact-finding took place in Spanish and often required translation of English language material.  Plaintiffs have not previously participated in litigation and are not sophisticated about the laws protecting their rights or the legal system itself. Consequently, Plaintiffs' counsel devoted substantial time and effort to effectively working with their clients who by their backgrounds and occupations are most likely to be victims of wage theft but are among those least familiar with legal process for redressing it.

15.     On May 7, 2019, the jury returned a verdict finding in Plaintiffs' favor on each and every question, awarding maximum damages where asked to assess an amount and adopting factual determinations nearly identical to those set forth in Plaintiffs' summary exhibit.  ECF Dkt. 115.  Pursuant to the Court's Order, Plaintiffs' counsel undertook to develop and obtain

Defendants' agreement as to a joint proposal for calculation of damages to be awarded to Plaintiffs based upon the Jury Verdict. A joint letter regarding damages calculation and a joint proposed Order have been filed with the Court. ECF Dkts. 116 and 117. This fee application is related to that proposed Order as any award of costs and fees should be included in the final judgment entered in this action.

## II.     Time Spent on the Litigation

16.     As of May 24, 2019, WJCNY had spent more than 970 hours litigating this case, which includes more than 800 attorney hours, more than 120 paralegal hours, and more than 20 clerical hours. WJCNY also incurred more than $8,000 in out-of-pocket costs prosecuting this litigation, which were incidental and necessary to the representation of the Plaintiffs.

17.     WJCNY is a leanly staffed, non-profit public interest law practice and must consistently minimize duplication of efforts in our litigation matters so as to serve the greatest number of low-income households throughout New York State while also assuring that adequate staffing recourses are allocated to any case as needed.

18.     Plaintiffs' Counsel seeks fees based on the lodestar method of compensation. Counsel's hourly billing rates in the Southern District of New York are $350 for legal director Robert McCreanor, $225 for staff attorney Maureen Hussain and for staff attorney John Marsella, $125 per hour for paralegals Ken Wolkin and Nathalia Rodaso-Oliveras, and $50 for clerical work performed by Amanda Batista and Diana Saguilan.

19.     As of May 29, 2019, Plaintiffs' Counsel's total lodestar on this case was $249,562. Attached as Exhibit 1 is a summary of the time spent by each attorney, paralegal and

administrative staff person as of the date of this filing.[1]

20. Exhibits 1A-H are spreadsheets containing the contemporaneous time records of Plaintiffs' Counsel for this case.

### III. Worker Justice Center of New York

21. WJCNY, a statewide non-profit legal assistance organization with offices in Westchester, Ulster and Monroe counties, and its predecessor organizations (Farmworker Legal Services of New York and Workers Rights Law Center of New York) have represented low-wage workers throughout New York State in significant employment litigation matters, including many collective and class action cases, for several decades.

22. WJCNY does not charge its clients for legal assistance but does depend on awards of costs and fees under FLSA, NYLL and other fee shifting statutes to maintain its operations and continue to provide legal assistance to other vulnerable, low-income New Yorkers.

23. This case was handled without prepayment of costs and fees by the Plaintiffs. WJCNY has advanced all the costs of this litigation to date and has covered the overhead for office expenses and payroll of staff handling the litigation.

24. Current cases being handled by WJCNY are summarized on our website http://wjcny.org.

25. WJCNY is currently handling litigation around New York State in which we represent low-wage workers in labor and employment matters across a range of industries, including multiple certified and putative collective and class actions in the Southern and Western Districts of New York. For a summary list of major cases currently under litigation by the

---

[1] Plaintiffs' counsel expects to continue to have significant work hours in the future trying to collect any judgment against the Defendants.

7

WJCNY, see the WJCNY's website.

**IV.     Lawyers and Staff Working on this Case**

26.     There are currently six full-time practicing attorneys employed at WJCNY, four of whom are primarily focused on labor and employment matters affecting low-wage and immigrant workers and two of whom are focused on immigration law matters.  WJCNY has a robust and diverse community outreach staff who are largely bilingual in English and Spanish and culturally competent in the provision of services to our clients.  The WJCNY staff members who worked on this case include attorneys Robert McCreanor, Maureen Hussain and John Marsella; paralegals Ken Wolkin and Nathalia Rosado-Oliveras, and administrative assistants Amanda Batista and Diana Saguilan.

**A.     Robert McCreanor**

27.     I am a 2002 graduate of the Harvard Law School and have been actively practicing law for nearly 17 years.  I served by appointment of Robert Morgenthau as an Assistant District Attorney for three years in a trial bureau of the New York County District Attorney's office during which time I prosecuted hundreds of misdemeanor and felony cases including more than 15 of which were tried to verdict before juries and in which I served as lead or sole trial counsel, and others which concluded through bench trials.  I was subsequently employed for approximately two years as a litigation associate at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP where I primarily represented individual and corporate clients in commercial litigation matters including a major privately initiated federal anti-trust action in which I served as the senior associate on the matter.

28.     For more than a decade, I have worked in various non-profit, public interest legal practice settings.  I was the founding staff attorney for the employment and housing litigation programs at Catholic Migration Services (CMS), a leading provider of non-profit civil legal

services to immigrants and refugees in Brooklyn and Queens, NY. In this capacity, I frequently represented large groups of low-income individuals in both housing and employment law matters. For example, I served as lead counsel for Plaintiffs in *Aguaiza et al. v. Vantage Properties LLC et al*. (105197/08), a case brought in New York State Supreme Court by dozens of low-income, immigrant tenants against their corporate landlords. Similarly, I served as co-counsel for Plaintiffs in *Chamorro et al. v. Ghermezian et al* (SDNY 12-cv-8159), a Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) case in the Southern District of New York which was conditionally certified as a collective action. I subsequently served as Director of Legal Services for CMS during which time I continued to litigate a high volume of housing and employment cases, as well as handle immigration legal matters, while supervising a legal staff comprised of approximately 25 attorneys, paralegals and administrative support persons.

29.     I then served as Executive Director and supervising attorney for the Rhode Island Center for Justice, a non-profit public interest law office based in Providence, RI. During this time, I continued to represent large groups of low-income individuals in a range of employment law and civil rights related legal practice areas. For example, I served as lead counsel for Plaintiffs in *Bennett et al. v. Ahern et al.* (PC-15-4214), a class action brought in Rhode Island Superior Court by several low-income, medically vulnerable utility consumers against National Grid and the State of Rhode Island on behalf of more than 5,000 similarly situated households who had experienced illegal shut-off of their gas and electric utility service. In this case, I successfully argued for Plaintiffs at a preliminary injunction hearing, obtaining provisional class-wide injunctive relief. I also served as lead counsel for Plaintiffs in *Reyes et al. v. East Coast Lot & Pavement Corp. et al. (*1:16-cv-00592), a FLSA case brought in the District of Rhode Island and certified as a 216 (b) collective action. I also represented a group of low-wage workers as lead

counsel in *Guarcas et al. v. Gourmet Heaven et al.*, a case brought in the District of Rhode Island in which plaintiffs' prevailed on *inter alia* the issue of successor liability under the FLSA, the first such decision in the First Circuit. *Guarcas v. Gourmet Heaven*, LLC, 2016 US Dist LEXIS 180714 (DRI Nov. 30, 2016, No. 15-056ML)

30. I recently served as Executive Director and supervising attorney of the Hudson Valley Justice Center, a non-profit legal services organization, where my colleague attorney Maureen Hussain and I developed an employment litigation docket focused on representation of low-wage workers in wage and hour, illegal discrimination, labor trafficking and other related matters. *See Sandoval v. Tequila Sunrise of Westchester Inc. et al.* (SDNY 7:17-cv-01504) (FLSA and NYLL claims on behalf of restaurant worker); *Alberto et al. v. Plaza Sweets et al.* (SDNY 7:17-cv-10048-NSR) (FLSA, NYLL and ERISA claims on behalf of large-scale commercial bakery workers); *Barragan Contreras et al. v. Rosann Landscape Corp. et al.* (SDNY 7:17-cv-06453-CS) (conditionally certified FLSA collective action, Rule 23 certified NYLL class action on behalf of landscaping workers); *Ramirez et al. v. Abayev et al.* (SDNY 1:17-cv-08688) (FLSA and NYLL claims on behalf of construction workers).

31. As of June 1, 2018, I have served as Legal Director of Worker Justice Center of New York (WJCNY). In this capacity, I have continued to represent low-wage workers in labor and employment matters including the following cases[2]: *Cardenas et. al. v. A.J. Piedimonte Agricultural Development, LLC. et. al.,* (WDNY 1:18-cv-881)(conditionally certified FLSA collective action on behalf of farmworkers); *Diaz Reyes et al. v. W.D. Henry & Sons et al.* (WDNY

---

[2] All pending litigation matters from Hudson Valley Justice Center (HVJC), including this case, were transferred to Worker Justice Center of New York (WJCNY) when Maureen Hussain and I simultaneously moved from HVJC to WJCNY on June 1, 2018. An agreement between to the two organizations as to the reimbursement of costs and division of fees awarded in these cases is annexed hereto as Exhibit 3.

1:18-cv-01017) (FLSA, NYLL and Agricultural Worker Protection Act (AWPA) claims on behalf of migrant and seasonal farmworkers); and *Corea et al. v. Café Spice {GCT}, Inc. et al.* (SDNY 7:18-cv-10354) (FLSA and NYLL claims on behalf of large-scale prepared food production workers, conditional certification motion pending).

32. I have also instructed clinical legal education programs as an adjunct professor at St. John's University School of Law and taught doctrinal courses at Roger Williams University School of Law. I have published articles in scholarly journals and practitioners' guides regarding the practice of poverty law, representation of low-income individuals and groups, the intersection of law and community organizing and immigration legal matters. In 2013, I was selected by the American Bar Association's Rule of Law Initiative to develop and implement a first-of-its-kind human rights clinical legal education program in at the University of Bahrain College of Law. I frequently participate in panel events and instruct continuing legal education programs related to the representation of low-wage workers in employment law matters and related topics.

**B.     Maureen Hussain**

33. Maureen Hussain is a 2011 graduate of the Harvard Law School.

34. She was previously employed as a staff attorney at Catholic Migration Services in Brooklyn and Queens, NY where she represented low-income individuals and groups in employment, housing and immigration matters. She represented plaintiffs in the above referenced 216 (b) collective action *Chamorro et al. v. Ghermezian et al.* and also in *Gonsalez et al. v. Marin et al.* (EDNY 12-cv-1157), a FLSA, NYLL and pregnancy discrimination case brought in the Eastern District of New York on behalf of factory workers who were subjected to forced labor and other egregious legal violations. Ms. Hussain also assisted in the representation of a group of more than 30 low-income, immigrant tenants in *Centeno et al. v. Zara Realty Holdings Corp.* (28271/11), a case brought in New York State Supreme Court.

35. Attorney Maureen Hussain subsequently served as a law clerk to U.S. Magistrate Judge Debra Freeman in the Southern District of New York.

36. As referenced above, attorney Maureen Hussain recently worked as a staff attorney at Hudson Valley Justice Center (HVJC), where she represented multiple groups of low-wage workers in state and federal employment litigation matters including *Alberto et al. v. Plaza Sweets et al.*; *Barragan Contreras et al. v. Rosann Landscape Corp. et al.*; *Ramirez et al. v. Abayev et al.*; and *Anton et al. v. Go Green Finish et al.* (SDNY 7:18-cv-01506-NSR) (FLSA and NYLL claims brought on behalf of construction workers).

37. Since June 1, 2018, she has been employed as a WJCNY staff attorney. In this capacity, she has continued to handle employment law matters in state and federal court including those matters which were transferred with her from HVJC to WJCNY.

38. Ms. Hussain has also participated in the development of trainings and instructed continuing legal education programs on group representation in wage and hour matters, most recently at the New York State Bar Association's 2018 Legal Partnership Conference.

**C.     John Marsella**

39. John Marsella is a 2013 graduate of American University Washington College of Law.

40. Since August 2013, he has been employed as a staff attorney at WJCNY where he has represented individuals in civil rights and employment law matters. He has handled single plaintiff, class, and collective action claims involving discrimination, wage theft, and human rights violations before administrative agencies and in state and federal court.

41. Examples of his successful representation of low-wage workers in labor and employment law matters include securing a judgment on behalf of a plaintiff in an action brought pursuant to the Trafficking Victims Protection Reauthorization Act, the 13th Amendment of the

U.S. Constitution, and FLSA and NYLL in *Mathai v. George*, NDNY 1:13-cv-997. He has also successfully resolved numerous wage and hour law, workplace discrimination, and other labor and employment lawsuits favorably on behalf of low wage immigrant workers. *See Bocanegra, et. al. v. 93 Alexander St. et. al.,* WDNY 6:14-cv-06180*; Ramirez Valdivia v. Dodge Street LLC,* WDNY 6:14-cv-6476; *Trejo-Valdez v. Merrell et. al.,* WDNY 6:15-cv-6689*, Andres Perez et. al. v. Schum-Acres Dairy Ops. LLC. et. al.,* WDNY 6:17-cv-6580.

42. His experience includes successfully opposing multiple summary judgment motions in a multi-plaintiff discrimination lawsuit, *Nescolarde et. al. v. Pinkowski et. al.,* WDNY 6:12-cv-6707*;* and most recently securing conditional certification of a FLSA collective action and litigating on behalf of a group of forty-eight migrant and low wage farmworkers, *Cardenas et. al. v. A.J. Piedimonte Agricultural Development, LLC. et. al.,* WDNY 1:18-cv-881.

43. Outside of federal court Mr. Marsella has also successfully brought claims before the National Labor Relations Board ("NLRB"), Equal Employment Opportunity Commission ("EEOC"), and New York State Division of Human Rights, most recently securing a settlement of unfair labor practice charges brought before the NLRB on behalf of multiple low wage immigrant factory workers, *In the Matter of Goodness Gardens Inc.,* and a probable cause finding of disability discrimination on behalf of an immigrant laborer with the EEOC, *In the Matter of Javier Amigon.*

**D.  Paralegals Ken Wolkin and Nathalia Rosado-Oliveras**

44. WJCNY employs Ken Wolkin and Nathalia Rosado Oliveras as paralegals.

45. Mr. Wolkin is a 2012 graduate of Vassar College.  Since January 2013, he has served as a member of WJCNY's litigation team primarily assisting in the representation of individuals and groups in class action civil rights, labor and employment law matters.  He is

responsible for maintenance of WJCNY's case management database and has substantial experience in data management including creation of complex spreadsheets, damages calculations and other handling of litigation related data sets.

46. Ms. Rosado-Oliveras is a 2017 graduate of Wells College. Since April 2018, she has been employed as a paralegal at WJCNY where she is also a member of the litigation team, managing discovery materials and assisting in evidence gathering, data management and damages calculations

### E. Administrative Assistants Amanda Batista and Diana Saguilan

47. WJCNY also employs Amanda Batista and Diana Saguilan as members of its administrative support staff. Ms. Saguilan graduated from Bard College in 2006 and Ms. Batista graduated from SUNY-Albany in 2012.

## V. Billing Rates

48. Our firm currently employs the following billing rates:

| | |
|---|---|
| Robert McCreanor: | $350 per hour |
| Maureen Hussain: | $225 per hour |
| John Marsella: | $225 per hour |
| Paralegals: | $125 per hour |
| Clerical: | $50 per hour |

## VI. Time Records

49. Attached to this affirmation are spreadsheets containing dates, start and stop times for tasks performed by each team member, and descriptions of the tasks performed, all as contemporaneously recorded by the respective staff members. Exhibits 1A-H. I have exercised billing judgment by not including significant amounts of time including ordinary travel to and from client meetings, mediations, settlement conferences and court appearances, as well as the time of WJCNY paralegals spent interpreting for Plaintiffs during the trial. I have also excluded

the time spent by attorney John Marsella in attending the trial proceedings.

### VII. Costs

50. Attached to this affirmation as Exhibit 2 are the costs incurred by WJCNY in representing the Plaintiffs in this case. I have exercised discretion in not counting among the costs for which WJCNY seeks reimbursement significant and costly items including mileage to and from client meetings, internal copying of documents and mailing and postage fees.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: May 24, 2019
Kingston, New York

*/s/ Robert McCreanor*

Robert McCreanor
Worker Justice Center of New York
9 Main Street
Kingston, NY  12561
(845) 331-6615