## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------------------------------

**JOSE BISONO,**
**JOAQUIN VICENTE, and**
**EDGAR MENDEZ,**

Case No.: **7:17-cv-09431(VLB)(JCM)**

Plaintiff(s),

-against-

**TDL RESTORATION, INC.,**
**DRITON QUNI and GJON QUNI,**

Defendant(s).

-----------------------------------------------------------------------------------------------------

## DEFENDANTS
## MEMORANDUM OF LAW OPPOSITION TO
## PLAINTIFFS REQUEST FOR LEGAL FEES

### JASNE & FLORIO, L.L.P.
*Attorneys for Defendants*
30 Glenn St. Suite 103
White Plains, New York 10603
(914) 997-1212

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -ii-

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -1-

**FACTUAL STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -2-

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -3-

**POINT I: THE LAW IS CLEAR THAT EXCESSIVE BILLING**
**WILL NOT BE TOLERATED AS TO MATTERS OF FEE SHIFTING** . . . Page -3-

**POINT II: THE PLAINTIFFS APPLICATION IS RIFE WITH**
**VARIOUS FORMS OF EXCESSIVE & IMPROPER BILLING** . . . . . . . . . Page -5-

    **A.**    **Block Billing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -5-

    **B.**    **Double, Duplicative or Redundant Billing** . . . . . . . . . . . . . . . Page -7-

    **C.**    **Ministerial Task Billing** . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -9-

    **D.**    **Excessive, Redundant, or Otherwise Unnecessary Billing** . . . Page -10-

**POINT III : THE LAW DOES NOT ALLOW UNLIMITED**
**BILLING IN FEE SHIFTING MATTERS** . . . . . . . . . . . . . . . . . . . . . . . Page -11-

**POINT IV: WHERE THE BILL CONTAINS BLOCK BILLING,**
**DOUBLE BILLING, MINISTERIAL BILLING AND EXCESSIVE**
**BILLING, A REDUCTION OF 40% IS WARRANTED** . . . . . . . . . . . . . . Page -16-

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -17-

# **TABLE OF AUTHORITIES**

## **Cases**

*Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany,*
   522 F.3d 182 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -12-

*Clarke v. Hudson Val. Fed. Credit Union,*
   2016 US Dist LEXIS 29475 (S.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . Page -14-

*Cleanup N. Brooklyn v. Brooklyn Transfer LLC,*
   2019 US Dist LEXIS 66373 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . Page -13-

*Douyon v. NY Med. Health Care, P.C.,*
   49 F.Supp.3d 328 (E.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -6-

*Duracell Inc. v. Global Imports, Inc.,*
   2018 US Dist LEXIS 140093 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . Page -7-

*Ethelberth v. Choice Sec. Co.,*
   2016 US. Dist. LEXIS 104417 (E.D.N.Y. 2016). . . . . . . . . . . . . . . . . . . . . . . . . Page -9-

*Gordon v. Site 16/17 Dev., LLC,*
   2011 U.S. Dist. LEXIS 82367 (S.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . Page -10-

*Hyeon Soon Cho v. Koam Med. Servs. P.C.,*
   524 F.Supp. 2d 202 (E.D.N.Y. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -4-

*Jeong Woo Kim v. 511 E. 5th St., LLC,*
   2016 US Dist. LEXIS 162913 (S.D.N.Y. 2016). . . . . . . . . . . . . . . . Page -10-, Page -16-

*Kirsch v. Fleet St., Ltd.,*
   148 F.3d 149 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -5-

*Surdu v. Madison Global, LLC,*
   2018 US Dist. LEXIS 48356 (S.D.N.Y. 2018). . . . . . . . . . . . . . . . . . Page -10-, Page -12-

*Trinidad v. Pret A Manger (USA) Ltd.,*
   2014 US Dist LEXIS 132186 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . Page -6-

*Wong v. Hunda Glass Corp.,*
   2010 US Dist LEXIS 90736 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . Page -15-

**Statutes**

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>Page -1-</u>, <u>Page -3-</u>

New York Labor Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>Page -1-</u>

## INTRODUCTION

This underlying action was a wage and hour violation case brought against Defendants TDL Restoration Inc., Driton Quni and Gjon Quni[1].

Plaintiffs' Complaint in the underlying action contained two (2) Causes of Action against the Defendants alleging violations of the Fair Labor Standards Act (hereinafter "FLSA") and violations of the New York Labor Law (hereinafter "NYLL"). Plaintiffs did not allege causes of action for time spent traveling to and from the job site in their Complaint. During the course of the litigation, and especially at Trial, this matter was raised, necessitating vigorous defense from the undersigned counsel and law firm. Despite Plaintiffs' contention in their instant Fee Application, this matter was not made complex by the actions of the Defendants or Defendants' counsel. While Defendants were entitled to vigorously defend this action, and certainly Plaintiffs' counsel may assign and delegate work as he may so deem appropriate, that does imply that the Defendant should be made to bear an unlimited bill. The bills submitted by the Plaintiffs show repeated incidents of double billing; expending of significant time on routine matters, especially notable given the fact that this firm is well versed in this type of case; so-called "block billing"; and charges of attorney rates for ministerial tasks; all the while knowing that their clients would never be paying for their legal services through the Workers Justice Center, a non-profit organization providing free legal assistance.

As discussed hereinbelow, the fact that the Workers Justice Center does not charge for legal fees is not the basis for the request for reduction of the fees requested by Plaintiffs. Rather, it is the excessive time, double billing, block billing and ministerial tasks charged at attorney rates that form the crux of this Opposition.

---

[1] TDL Management Corp. was a named Defendant in this matter but was dismissed following the close of testimony at Trial. The entity has been dropped from the original caption in this matter.

### FACTUAL STATEMENT

Plaintiffs' counsel, attorneys and para-legals with the Workers Justice Center of New York (WJCNY), submit their fee application after recovering $373,731.77 following a jury trial. The Plaintiffs' counsel seek the sum of $249,562 for attorneys' fees plus costs for over 970 of billable hours on this simple three-employee wage and hour matter. This request amounts to nearly a two-thirds recovery of the total damages awarded as attorneys' fees. While Plaintiffs' counsel properly reduced their fee request for travel time for staff and attorney travel from Rochester to White Plains (although such is not clear for Ken Wolkin given his block billing entries), it is respectfully submitted that the fee application must be further reduced. Based on the convoluted billing which includes numerous instances of double billing, ministerial billing at attorney rates, block billing and excessive time spent on routine matters, all as set forth in the annexed and incorporated Spreadsheets annexed to the Affirmation of Hugh G. Jasne, Esq. as **EXHIBITS A, B, C** and **D**, it is respectfully submitted that the fee application be reduced by no less than 40%. While Defendants acknowledge that the hourly rate charged by the various members of the WJCNY may be reasonable in this jurisdictional district, it the number of hours billed for which fees are sought that must be deemed grossly unreasonable.

Additionally, it must be kept in mind that the Plaintiff counsel practice extensively in this area of the law. Thus, issues and matters should be more familiar, and readily at hand, such running the gamut from legal research to organization and assembly, right through to having legal arguments and documents which can be partially reconfigured, reconstituted, reused or re-purposed from other cases. In other words, as issues arise, such should be familiar to the Plaintiffs' attorneys on this matter with a knowledge base already established and not requiring a "cold" start up.

In short, billing for matters which are very familiar should be lower than usual, not higher,

and yet, that is the opposite of what is requested by the Plaintiffs herein.

It is well settled, if not even beyond cavil, that fee shifting in any case, including those under the auspices of employment or the FSLA, are not a license for unbridled billing. The tests for such billing are as set forth herein and the accompanying submission.

There is an old adage: People lie - numbers don't. The calculations of the annexed Spreadsheets (**EXHIBITS A - D**), in conjunction with the law as set forth herein, decry for a 40% fee reduction of the Plaintiffs' claims, as such are *per se* excessive.

## ARGUMENT

### POINT I
### THE LAW IS CLEAR THAT EXCESSIVE BILLING WILL NOT BE TOLERATED AS TO MATTERS OF FEE SHIFTING

The law is clear that the Court is in effect a guardian to prevent over billing in fee shifting cases. The billing as submitted by Plaintiff in this matter is clearly excessive. Indeed, even cut by 40%, or $99,825 of $249,562, wherein 40% is something of an accepted standard as detailed below, the billing would still be excessive at $149,737. Indeed, one could almost infer that the bills were set extraordinarily high, recognizing the standard of a 40% discount, which first brings the billing into a number, which not extraordinarily excessive, is still excessive.

The Plaintiffs seek $249,562 in legal fees against a verdict of $373,732 or 67%. The aforesaid cut by 40% as the standard, means the legal fees would therefore be $149,737 against the aforesaid $373,732 total recovery, or 40%.

As to the basis for the requested fee cut, the law set forth below is clear, but while bearing in mind that there is no rule against the Plaintiffs using any resources as deemed appropriate, the issue becomes whether the Defendants should be made to bear the burden thereof, and the law is clear that such should not be the case.

First, it appears to the Court that the amount of research and time that went into completing relatively straightforward tasks was excessive. Second, many of the time records contain vague explanations of the work performed. There are, for example, many entries that describe the work performed as "review case issues" or "confer re case strategy issues." These entries are not sufficiently specific to permit the Court to determine whether the attorneys spent their time on reasonably necessary tasks much less efficiently. Finally, the record reveals--and the Court has witnessed firsthand--a significant overlap of efforts by multiple counsel (that often occurs in much larger litigation) leading inexorably to the conclusion that a greater economy of time and effort could have been achieved on a three-employee wage-and-hour case. For example, plaintiffs had multiple attorneys attend court conferences and the one-day trial, where one would have been more than adequate. While the Court recognizes that pro bono work may result in such duplication of efforts as it provides associates at large law firms with hands-on experience they might not receive otherwise--and the Court commends the attorneys and their firm for taking on such work--it would not be fair to make defendants bear the costs of such training.

**'[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed "as a practical means of trimming fat from a fee application."'** *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *New York State Assn for Retarded Children*, 711 F.2d at 1146); *see also DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work); *American Lung Ass'n v. Reilly*, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (deducting 40% of plaintiffs' hours, finding that there was a duplication of work). Here, the Court finds a deduction of 40% in the number of hours billed by Choi and the D&L associates and legal assistants to be appropriate.

*Hyeon Soon Cho v. Koam Med. Servs. P.C.*, 524 F.Supp. 2d 202, 209-210 (E.D.N.Y. 2007)

**(emphasis added)**. The exact claims disfavored by the court as stated above, and below, are found

herein, including as detailed in the annexed Spreadsheets (**EXHIBITS A - D**).

The court's normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called "lodestar" figure, which is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.' *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); *see Cruz v. Local Union No. 3*, 34 F.3d at 1159. The lodestar should be based on 'prevailing market rates,' *Blum v. Stenson*, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984), for comparable attorneys of comparable skill and standing in the pertinent legal community.

Applications for fee awards should generally be documented by contemporaneously

created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. *See, e.g., Hensley v. Eckerhart*, 461 U.S. at 437 n.12; Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); *New York Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). **Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded,** *Hensley v. Eckerhart*, 461 U.S. at 434; **and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'** *New York Association for Retarded Children v. Carey*, 711 F.2d at 1146. A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories,' *Hensley v. Eckerhart*, 461 U.S. at 434.

These principles were properly applied by the district court in this case. In light of Kirsch's submissions, we see no abuse of discretion in the adjustment of the rate to be paid for Wisehart's time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records.

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172-173 (2d Cir. 1998) (**emphasis added**).


## POINT II
## THE PLAINTIFFS APPLICATION IS RIFE WITH
## VARIOUS FORMS OF EXCESSIVE & IMPROPER BILLING

Courts are tasked with assessing and reviewing bills from counsel seeking reimbursement from the opposing party. Over time, several common forms of excessive or over-billing have been defined as set forth hereinbelow. Such excessive or over-billing provides the Court with grounds to make across the board deductions to reduce the subject bill. Notably the bills of the Plaintiffs seem to be rife with all such grounds for deductions.

### A.   Block Billing

Plaintiffs' counsel has numerous instances of block billing, defined as

'the lumping together of discrete tasks with others that are not clearly defined, which "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity."' *Penberg*, 2011 U.S. Dist. LEXIS 31022, 2011 WL 1100103, at *9 *(quoting Ass'n of Holocaust Victims v. Bank Austria*, No. 04 Civ. 3600, 2005 U.S. Dist. LEXIS 28880, 2005 WL 3099592, at *5 n.9 (S.D.N.Y. Nov. 17, 2005)).

*Douyon v. NY Med. Health Care, P.C.*, 49 F.Supp.3d 328, 350 (E.D.N.Y. 2014).

> Block billing should be reduced or vacate in the entirety, as stated in that

> Jorge Rivas submitted the following 4-hour entry: "Prepare Trial Binder for Judge/travel to SDNY Court to hand deliver docs and copies to Defendants Office." (Timesheet of Rivas, attached as part of Exh. 1 to Lee Decl.). One of Shin Hahn's entries states, "Participated in discovery call, Drafted letter to Court, analyzed Defendants' opposition to Plaintiffs motion for conditional collective certification" (Timesheet of Hahn, entry of 7/12/13), and another reads, "Commented on Defendants' supplemental discovery response, drafted letter to Court re Defendants' production, drafted stipulation re $500,000 and jurisdiction under FLSA" (Timesheet of Hahn, entry of 8/2/13). Such instances are inappropriate and are a basis for reduction.

*Trinidad v. Pret A Manger (USA) Ltd.*, 2014 US Dist LEXIS 132186 (S.D.N.Y. 2014).

As to the block billing in the instant matter, by way of example, Attorney McCreanor's time record for January 31, 2018 shows 3.3 hours for "review of pay records, copying and send to opp counsel for mediation disclosure"; his time record for February 25, 2019 shows 3.29 hours for "correspondence with opposing counsel re jpto (Joint Pre-Trial Order), stips and exhibit lists, finalizing jpto and filing on ecf". Moreover, Attorney McCreanor's time records reflect block billing over the course of four (4) days, May 21, 2019; May 22, 2019; May 23, 2019 and May 24, 2019 - a total of 29 hours and 15 minutes; for identical work on each day, some of which is ministerial in nature, as discussed hereinbelow.

Attorney Hussain's time records include an entry for January 25, 2019 for 4.27 hours for "finalizing Rule 56.1 counter-statement, attorney declaration, sending video and subpoena materials to opposing counsel", some of which time is ministerial in nature as discussed hereinbelow; and an April 29, 2019 entry for 7.00 hours is for "trial prep with John, Rob and Ken; reviewing summary spreadsheet; finalizing opening statement; prep with Jose; finalizing stips", which also qualifies as an incident of double and even triple and quadruple billing as noted hereinbelow and on the Spreadsheets (**EXHIBITS A - D**).

Mr. Marsella has several "block billing" entries including on April 25, 2019 for 3 hours; on April 27 for 2 hours and 15 minutes; on April 29 for 4 hours and 30 minutes; and on April 29 for 8 hours and 15 minutes. Notably, Mr. Marsella billed for 12 hours and 45 minutes on April 29.

**B.**    **Double, Duplicative or Redundant Billing**

Plaintiffs' counsel has numerous instances of double, duplicative or "redundant" billing which is exemplified by the overstaffing of client meetings, depositions and conferences, which should be excluded from the fee calculation to "trim the fat" from this excessive application. *Duracell Inc. v. Global Imports, Inc.*, 2018 US Dist LEXIS 140093 (S.D.N.Y. 2018). For example, on January 10, 2018, Attorney Hussain billed .5 hours for "joined meeting with client" which was billed by Mr. McCreanor for 2 hours. The same holds for Attorneys Hussain and McCreanor on January 30, 2018, when Attorney Hussain billed 1.67 hours for being part of a meeting for which Mr. McCreanor billed 3 hours. On February 12, 2018, both attorneys charge for time for "meeting with client".

On March 1, 2018, Attorney Hussain charged 3.15 hours for "preparing for and meeting with clients"; on the same day, Mr. McCreanor seeks 2 hours of billable time for "meeting with clients to prepare for mediation". Attorney Hussain and Mr. McCreanor both bill for 2 hours of time for "meeting with clients" on October 22, 2018; and each bill 1 hour and 15 minutes for "meeting with clients" regarding trial on December 11, 2018. Both Attorney Hussain and Mr. McCreanor bill over 2.5 hours for "conference" or "meeting" with opposing counsel on December 28, 2018; and each attorney bills over 3.5 hours for "meeting with clients" with regard to a Summary Judgment Motion on January 20, 2019. Both attorneys seek fees for trial preparation of the Plaintiffs on April 13, 2019; April 20, 2019; April 22, 2019; and April 24, 2019.

The fee application seeks remuneration for both Attorney Hussain and Mr. McCreanor's

appearance at the mediation with Jim Keneally on March 13, 2018; for attendance at the Court conference on August 16, 2018; for attendance at the settlement conference on October 25, 2018; for attendance at a pre-trial conference on November 29, 2018; the pre-trial conference on April 24, 2019; and the trial on April 30, 2019; May 1, 2019; May 2, 2019; May 3, 2019; May 6, 2019; and May 7, 2019.

Both Attorneys Hussain and McCreanor attended and are seeking to be paid for attendance at a 30(b)(6) deposition of Defendant TDL Restoration, Inc. on July 6, 2018 as well as the Plaintiff's individual depositions on July 25 2019 and July 26, 2018.

Attorney John Marsella seeks 4 hours of billable time on July 5, 2018 for "reviewing Complaint, Answer, and exchanged discovery" which is to say that Plaintiffs seek to be reimbursed for yet another attorney getting "up to speed" on this matter.

Attorney Hussain and Attorney Marsella seek attorneys fees for both of their attendance at the 30(b)(6) depositions of Defendants TDL Restoration Inc. and TDL Management Corp. on July 9, 2018, at which Attorney Marsella was admittedly "second chair". Additionally, Attorney Hussain and Attorney Marsella seek attorneys fees for both of their attendance at the depositions of Defendants Gjon Quni and Driton Quni on July 10, 2018, at which Attorney Hussain admittedly was "second chair".

Attorney Hussain, Attorney McCreanor and Attorney Marsella all bill 7 hours or more on April 29, 2019 for "trial prep", which is but one example of up to quadruple billing in this matter (*see* Spreadsheets, **EXHIBITS A - D**).

It bears repeating that it is true and unequivocal that nothing under the law prevents the handing of a file in any manner counsel may so desire, but it is equally true and unequivocal that the Defendant need not be mandated to bear the associated cost.

**C.**     **Ministerial Task Billing**

Finally, there are numerous instances of ministerial tasks being performed by an attorney, which are "not ordinarily recoverable at an attorney's rate". *Ethelberth v. Choice Sec. Co.*, 2016 US Dist. LEXIS 104417, at *36-37 (E.D.N.Y. 2016).

Such tasks include filing and serving documents, copying, mailing, scanning, "finalizing", Bates stamping, and certain communications which could be handled by a non-attorney, and certainly need not be handled by a partner at partner rates. Examples from Attorney McCreanor's time records include entries for administrative or ministerial tasks on January 31, 2018 ("copying and send to opp counsel"); June 8, 2018 ("serving depo notices"); June 22, 2018 ("scan and send to Maureen"); August 9, 2018 ("prepare 3rd party subpoenae to be served on Signature Bank, Capital One and Citibank, send to process server and opposing counsel"); August 20, 2018 and August 22, 2018 ("communication with Citibank/Capital One re subpoena compliance"); October 23, 2018 ("sent to Maureen"); January 11, 2019 ("gathering and reviewing sample trial materials [jpto, voir dire, jury instructions, exhibits, etc.]"); February 25, 2019 ("finalizing jpto and filing on ecf") and April 26, 2019 ("technology set up in courtroom") - a duplicative entry as Attorney Hussain is also charging time for this ministerial task; and April 27, 2019 ("input into summary spreadsheet").

Attorney Hussain's time records also indicate numerous instances of ministerial tasks being charged at an attorney rate including February 6, 2018 ("reviewing and Bates-stamping Plaintiff's mediation disclosures"); May 30, 2018 ("filing settlement update letter"); September 24, 2018 ("delivering consent form to Clerk's office"); October 1, 2018 ("extracting files from Signature Bank subpoena response; November 15, 2018 ("scanning Defts' discovery responses"); February 1, 2019 ("refiling SJ opp ocs to link to defense counsel's refiled docs"); February 25, 2019 ("filing proposed jury instructions, voir dire, and verdict sheet"); March 4, 2019 ("filing motions in limine"); and April

26, 2019 ("technology setup in courtroom") - a duplicative entry as Attorney McCreanor is also

charging time for this ministerial task.

> While the hourly billing rates charged and hours expended for the most part are reasonable, **the time records reflect an excessive amount of time vaguely billed for teleconferencing, and duplicative work, such as multiple attorneys reviewing the same documents. In addition, the records reflect attorney billing for ministerial tasks that should have been performed by a paralegal or secretary**. (E.g., Rodriguez-McCloskey Aff. Ex. E: Time Sheets at p. 5.) **When time records reflect vague and duplicative entries, and entries for attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees**. See, e.g., *VFS Fin., Inc. v. Pioneer Aviation LLC*, 08 Civ. 7655, 2009 U.S. Dist. LEXIS 70003, 2009 WL 2447751 at *5 & n.8 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) (10% fee reduction where 'attorneys' billing entries are overly vague or duplicative.' (citing cases)); *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, 04 Civ. 2666, 2008 U.S. Dist. LEXIS 95721, 2008 WL 4925020 at *2 (S.D.N.Y. Nov. 10, 2008) (Daniels, D.J. & Peck, M.J.) (5% fee reduction 'to take into account attorney hours billed for the performance of paralegal-type work, as well as duplicative charges.'); *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, 04 Civ. 3854, 2008 U.S. Dist. LEXIS 90985, 2008 WL 4833025 at *7 (S.D.N.Y. Nov. 3, 2008) (Peck, M.J.) (5% across-the-board fee reduction) (citing cases)).

*Gordon v. Site 16/17 Dev., LLC*, 2011 U.S. Dist. LEXIS 82367, *18-19 (S.D.N.Y. 2011) (**all

emphasis added**).

**D.**     **Excessive, Redundant, or Otherwise Unnecessary Billing**

The Court is respectfully requested to "'exclude . . . hours that were not reasonably

expended' 'such are where there is overstaffing or the hours are 'excessive, redundant, or otherwise

unnecessary'". *Surdu v. Madison Global, LLC*, 2018 US Dist. LEXIS 48356, at *26-28 (S.D.N.Y.

2018). Where counsel devotes excessive time to matters, reduction is warranted. *Jeong Woo Kim v.

511 E. 5th St., LLC*, 2016 US Dist. LEXIS 162913, at *12-19 (S.D.N.Y. 2016).

Attorney Hussain's time sheets are rife with excessive and unwarranted time spent. For

example, on February 22, 2018, February 24, 2018, and February 25, 2018, Attorney Hussain

reviewed Defendants' mediation disclosures for a total of 5.57 hours, while Attorney McCreanor

spent nearly 17.5 hours performing the same tasks. Attorney Hussain spent nearly 9 hours preparing

for the deposition of TDL Restoration - a deposition for which both she and Attorney McCreanor bill their time. Attorney Hussain spent nearly 20 hours "reviewing time and pay records and preparing proposed stipulation" between December 28, 2018 and January 6, 2019. Attorney Hussain also spent more than 15 hours "cataloging and reviewing Defendants' disclosures on November 26, 2018; November 27, 2018; December 10, 2018; December 13, 2018; December 14, 2018; January 18, 2019; and January 20, 2019; notably duplicating Attorney McCreanor's efforts between January 11 and January 18, 2019.

Attorney Hussain also billed nearly 12 hours for "drafting motions in limine re: excluding testimony, RFAs" between February 28 and March 4, 2019. Finally, Attorney Hussain took 10.3 hours for "reviewing Deft's proposed trial exhibits between April 20 and 22, 2019.

With regard to Attorney Creanor's excessive time entries, the documents provided show an entry for April 22, 2019 for 15 hours and 41 minutes for "draft and send to opposing counsel proposed stipulation re geographic location of work sites", however there is no "start time" for this task, only an "end time" of 3:41, which coincidentally is the military equivalent time of 15:41, the claimed time spent on this task. As this entry is entirely unfounded and unsubstantiated and clearly incorrect as to the total time spent, it should be discarded in its entirety.

### POINT III
### THE LAW DOES NOT ALLOW UNLIMITED
### BILLING IN FEE SHIFTING MATTERS

It is undisputed that the lodestar calculation is the starting point for any legal fee calculation.

The lodestar was the product of the attorney's usual hourly rate and the number of hours worked. *See id.* at 167 (directing district courts to calculate the lodestar using the attorney's 'normal billing rate'); *see also City of Burlington v. Dague*, 505 U.S. 557, 559, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). After determining the lodestar, the district court could adjust it in setting the reasonable fee. *See generally Hensley*, 461 U.S. at 433 ('The most useful *starting point* for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an *initial estimate* . . . .') (emphasis added); Lindy, 487 F.2d at 168-69. Thus, the lodestar method involved two steps: **(1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.**

*Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2007) (**emphasis added**). The calculation however is not unlimited, in that:

> . . . . . .the **district court should, in determining what a reasonable, paying client would be willing to pay**, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill* at 184 (**emphasis added**).

> The Honorable Paul A. Engelmayer, United States District Judge, addressed this same issue in *Zhang v. Lin Kumo Japanese Restaurant, Inc.*, 13 Civ. 6667 (PAE), 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.). **Upon 'a close review' of the contemporaneous time records submitted by plaintiffs' counsel in that case, Judge Engelmayer also found that most of the work billed to the lead partner on the case easily could have been performed by junior associates**. *Zhang v. Lin Kumo Japanese Restaurant, Inc.*, *supra*, 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530 at *2. While Judge Engelmayer noted that the lead partner was 'at liberty to decide how to use his time and manage his cases,' **it was not appropriate to bill every menial task in the litigation at a partner rate**. *Zhang v. Lin Kumo Japanese Restaurant, Inc.*, *supra*, 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530 at *2. **Therefore, Judge Engelmayer determined half of the billed hours should be reduced to an associate level rate** and adjusted the lodestar amount accordingly. *Zhang v. Lin Kumo Japanese Restaurant, Inc.*, *supra*, 2015 U.S. Dist. LEXIS 115608, 2015 WL 5122530 at *2. **I make the same determination here.** Thus, 51.031 of class counsel's hours should be billed at $400 an hour and 51.031 of class counsel's hours should be billed at the associate rate of $250 an hour, yielding a total lodestar amount of $33,170.15.

*Surdu*, *supra*, at *26-28 (**emphasis added**).

Although it is not the Defendants' contentions that this Court should not award any legal fees

to the Plaintiffs, such is certainly not boundless nor unlimited, and does not allow duplication and

must be governed by the Court.

> Turning to the remaining entries, although there is no impropriety in two groups of lawyers representing a single client, where there are two groups, they must confer to decide who is in charge and how the labor will be allocated. Plaintiffs' counsel here have not explained how they divided the labor and have presented the court with two separate hierarchies without any indication of the roles of each firm or attorney in the litigation of this case. **Implicit in their application, however, is a structure in which Attorney Steel completed the bulk of the work, while nearly all other counsel researched, reviewed, and edited substantially the same matters. I infer from this that there was uncompensable duplication of effort**.

> Specifically, I find that the request for compensation for approximately 23 hours to draft a three-page pre-motion conference letter, 25 hours to prepare for the pre-motion conference, and 180 hours spent on the moving and reply briefs, even in a case such as this with a changing legal landscape, is excessive and above what a reasonable client would be willing to pay. It is likely that these figures are so high because between five and seven attorneys edited each filing and four attorneys attended the pre-motion conference. **Moreover, plaintiffs 'cannot have it both ways' by seeking fees at or above the highest range for this district based on their claimed skill and experience, while also spending an inordinate amount of time researching and editing briefs that more experienced counsel could complete more quickly**. *Harty v. Par Builders, Inc.*, 2016 U.S. Dist. LEXIS 18520, 2016 WL 616397, at *4 (S.D.N.Y. Feb. 16, 2016).

*Cleanup N. Brooklyn v. Brooklyn Transfer LLC*, 2019 US Dist LEXIS 66373, at *15-16 (E.D.N.Y.

2019) (**emphasis added**).

> Finally, as explained further below, the Court strongly believes, based on the facts and circumstances presented here, that it would have been excessive for more than one or two attorneys to litigate this case on Clarke's behalf if the issues of class certification and HVFCU's conduct related to other individuals were not part of this case. **The use of an excessive number of attorneys was a significant aspect (and important indicator) of Clarke's counsels' gearing up for a major case**. **The Court's calculation of the hours reasonably expended in pursuit of Clarke's claims takes into account the fact that the case was significantly over-litigated based on Clarke's attorneys' longshot hope for class certification**.

. . .

> Fourth, although a prevailing party seeking to establish his reasonable fee under a fee-shifting statute may, as a general matter, be awarded fees for time reasonably spent in establishing the entitlement to the fee award, *see Gagne v. Maher*, 594 F.2d

336, 344 (2d Cir. 1979), the Court finds that Clarke's fee award should not include work performed for such purposes here. The offer of judgment that Clarke accepted provided for 'reasonable and necessary attorneys' fees and costs of the litigation accrued to the date' of the offer of judgment. (ECF No. 94.) Thus, any fees relating to work performed in relation to Clarke's motion for attorney's fees—which necessarily occurred after that date—is beyond the scope of fees to which the parties agreed and which Clarke may fairly be entitled to in this case. The Court further concludes that the number of hours billed for the purpose of preparing Clarke's fee motion appears to be excessive. The Court thus reduces Teske's fees by 7.7 hours charged at a $400 hourly rate, for a total of $3,080, and, reduces Bromberg's fees by 6.6 hours charged at a $400 hourly rate, for a total of $2,640.

**Fifth, HVFCU identifies numerous entries relating to internal meetings among and between Clarke's attorneys that must be eliminated or reduced because they constitute double billing or are, at the very least, excessive and beyond that which a client would reasonably pay**. As indicated above, it would have been unreasonable for six attorneys from two different law firms to perform work on this case had a class action (and punitive damages of similarly broad scope) not been pursued. At most, Clarke's individual claims would have called for the work of two attorneys from one firm. If Clarke's case had been litigated in that fashion, most of these internal meetings would not have occurred. If they had occurred, a client in Clarke's position would not reasonably have paid for such meetings. HVFCU identifies entries for internal meetings at Teske (and meetings between attorneys at Teske and Bromberg) totaling 20.4 hours of work performed at various hourly rates, amounting to a total charge of $7,790. HVFCU similarly identifies, in Bromberg's time sheets, 17.7 hours of entries for communications with Teske, which amounted to a total charge of $7,080. The Court concludes that all of these charges are unreasonable and must be removed from the Court's calculation of hours reasonably expended.

*Clarke v. Hudson Val. Fed. Credit Union*, 2016 US Dist LEXIS 29475, at *17-23 (S.D.N.Y. 2016)

(**emphasis added**).

The requested fee must be reasonable under the circumstances, and based upon the percentages as detailed above, the requested fee application is excessive by any stretch of ones imagination.

However, '[t]he fee applicant bears the burden of establishing the reasonableness of the hourly rates requested — in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community.' *Cesario v. BNI Construction, Inc.*, 2008 U.S. Dist. LEXIS 103155, 2008 WL 5210209, at * 9 (S.D.N.Y. Dec. 15, 2010). In their one and three page applications, Kraselnik and Lee have not met this burden. They have only made

blanket assertions without affidavits or evidence explaining why they deserve a rate of $450 per hour. **For example, they have provided no evidence of actual rates charged to clients or awarded by a court. Moreover, the Court agrees with Defendants that this was a "straightforward" case**, requiring no more than two depositions and three days of trial. Although there were issues presented to the Court prior to trial, none required more than one to two telephonic conferences to be resolved. See Section A. Although Defendant contends that since Kraselnik & Lee is a small firm, it should be awarded a lower hourly rate, '[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower rate.' *Imbeault v. Rick's Cabaret Intern. Inc.*, 2009 U.S. Dist. LEXIS 71562, 2009 WL 2482134, at *3 (*citing McDonald ex rel. Prendergast Pension Plan of the NYSA-ILA Pension*, 450 F.3d 91, 97 n. 6 (2d Cir. 2006)). Finally, the range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour. *See De Los Santos*, 2010 U.S. Dist. LEXIS 15463, 2010 WL 445886, at *3 (a rate of $250-$350 per hour is reasonable for an employment attorney); *Torres v. City of New York*, 2008 U.S. Dist. LEXIS 11027, 2008 WL 419306, at * 1 (finding that $350 per hour is reasonable for an attorney with 10 years' experience); *Marisol A.*, 111 F. Supp. 2d at 386 (a rate of $300 per hour for an attorney with 10-15 years' experience was reasonable). Based on the skill displayed by Counsel, and the number of years experience, the Court finds that a rate of $350 per hour is a reasonable rate for the work performed in this rather straightforward FLSA case.

Kraselnik and Lee claim they dedicated 460 hours to this case; 366.6 hours for Lee, and 123.4 hours for Kraselnik. (Wong's App.) **The Court finds that the use of two attorneys for this uncomplicated, one-plaintiff FLSA case is both redundant and excessive. An across-the-board reduction in cases with more than one attorney is appropriate to account for redundancy**. *See Carey*, 711 F.2d 1136, 1148 Moreover, upon review of Kraselnik's hours, it appears that his primary function was to review Lee's work since there was no reason set forth why it was necessary for Kraselnik to perform the work recorded. Since Lee has approximately twelve years' experience, there was no need to review his work. The trial itself was three days and involved only two witnesses. Only one experienced attorney was needed. As such, Kraselnik's hours will not be included in the computation of attorney's fees. **Moreover, upon review of Lee's hours, the Court finds that some time expenditures were unnecessary or excessive, and that an experienced attorney should not have required as much time. Some examples of this include Lee's four-hour time expenditure preparing a letter regarding deposition dates, five hours spent revising a letter and "correspondence," and six and one-half hours preparing a letter for the Court. Accordingly, this Court has determined that a 15% across-the-board reduction is warranted to account for some excessive or unnecessary time expenditures**. As such, the total hours calculated for attorney's fees are 286 hours.

*Wong v. Hunda Glass Corp.*, 2010 US Dist LEXIS 90736, at *7-9 (S.D.N.Y. 2010) (**emphasis**

**added**).

### POINT IV
### WHERE THE BILL CONTAINS BLOCK BILLING, DOUBLE BILLING, MINISTERIAL BILLING AND EXCESSIVE BILLING, A REDUCTION OF 40% IS WARRANTED

In situations in which there is rampant over billing, the law allows a so-called blanket or

broad general reduction, and in such cases 40% is something of a generally accepted standard.

> **To account for the deficiencies noted above -- having considered the reductions applied in similar cases and what a reasonable client would be willing to pay -- the requested attorneys' hours are reduced by 40%**. *See Guo*, 2016 U.S. Dist. LEXIS 14428, 2016 WL 452319, at \*7 (**40% reduction resulting in 197.39 hours for straightforward wage-and-hour case**); *Jimenez*, 2015 U.S. Dist. LEXIS 84370, 2015 WL 3947273, at \*3-4 (finding 155.6 hours worked by plaintiffs' counsel reasonable in 'straightforward wage and hour action that involved a small number of depositions, relatively minor motion practice, and a brief trial'); *Gonzalez*, 112 F. Supp. 3d at 30 (reducing 249.1 requested hours to fewer than 181 in wage-and-hour case); *Griffin v. Astro Moving and Storage Co.*, No. 11 CV 1844, 2015 U.S. Dist. LEXIS 43326, 2015 WL 1476415, at \*9-10, 12 (E.D.N.Y. March 31, 2015) (finding 154.5 hours and $52,022.50 in attorneys' fees reasonable); *Agudelo*, 2013 U.S. Dist. LEXIS 50486, 2013 WL 1401887, at \*3 (finding 50% reduction appropriate); *Zhao Hui Chen*, 2012 U.S. Dist. LEXIS 11570, 2012 WL 279719, at \*4 (**40% reduction from 309.7 hours to 186 hours in straightforward wage-and-hour case that went to trial**); *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 U.S. Dist. LEXIS 90736, 2010 WL 3452417, at \*4 (S.D.N.Y. Sept. 1, 2010) (reducing claimed 460 hours to 286 hours in simple wage-and-hour case that went to trial).

*Jeong Woo Kim v. 511 E. 5th St., LLC*, 2016 US Dist LEXIS 162913, at \*12-19 (S.D.N.Y. 2016)

(**emphasis added**).

## **CONCLUSION**

Based upon the applicable law and facts, and the annexed Affidavits and Exhibits, the Defendants request that the requested fees of the Plaintiffs should be decreased as set forth herein by no less than a 40% reduction, and such other and further relief as this Court deems just and proper under the circumstances.

Dated: White Plains, New York
June 21, 2019

Respectfully submitted,

JASNE & FLORIO, L.L.P.
Attorneys for Defendants

By/Hugh G. Jasne, Esq. (HGJ-5041)